In an action to recover damages for breach of an insurance contract, the plaintiffs appeal from an order of the Supreme Court, Westchester County (Murphy, J.), entered December 22, 2011, which denied their application, in effect, for an award of interest on the sum of $508,304.17, representing the difference between the amount of damages set forth in an umpire’s appraisal award and an amount initially paid to them by the defendant, and for an award of additional payments under a policy of casualty insurance for injury to personal property.
Ordered that on the Court’s own motion, the notice of appeal is deemed to be an application for leave to appeal, and leave to appeal is granted (see CPLR 5701 [c]); and it is further,
Ordered that the order is affirmed, with costs.
In March 2005, the plaintiffs’ residence was damaged by fire. The defendant, Charter Oak Fire Insurance Company (hereinafter Charter Oak), initially paid the plaintiffs in excess of $2,000,000 pursuant to a homeowners insurance policy, including, among other things, a payment of $722,644 for damage to the plaintiffs’ personal property. Alleging that they were entitled to additional coverage under the policy, the plaintiffs commenced the instant action against Charter Oak to recover damages for breach of contract.
*960 While the action was pending, and pursuant to the terms of the homeowners insurance policy, the matter was submitted to an independent umpire to resolve a dispute between the parties’ appraisers regarding the value of the loss to the plaintiffs’ real property. Pursuant to a report dated May 16, 2011, the independent umpire determined that the damage to the plaintiffs’ real property occasioned by the fire amounted to $1,577,327.24. In accordance with this determination, Charter Oak issued a check to the plaintiffs on June 29, 2011, in the amount of $508,304.17, representing the difference between the umpire’s appraisal and the amount initially paid to the plaintiffs for damage to their dwelling. Since the action remained pending, the plaintiffs, in effect, applied to the Supreme Court for an award of interest pursuant to CPLR 5001 on the $508,304.17 that was paid on June 29, 2011, and for an award of additional payments under the insurance policy for damage to personal property. In an order dated December 21, 2011, the Supreme Court denied the plaintiffs’ application, and determined that Charter Oak was not obligated to pay these additional amounts.
The Supreme Court properly determined that the plaintiffs were not entitled to collect interest on the $508,304.17 that Charter Oak paid to them following the umpire’s appraisal award. The “Loss Payment” provision in the homeowners insurance policy provided that Charter Oak was obligated to pay the plaintiffs within 60 days after receiving the “proof of loss” and the “filing of an appraisal award.” Pursuant to this provision, Charter Oak timely paid the plaintiffs the amount of $508,304.17 within 60 days of the filing of the appraisal award. Accordingly, it did not breach the insurance contract in this regard (see Caiati of Westchester v Glens Falls Ins. Co., 265 AD2d 286 [1999]; Rubin v Williams, 245 AD2d 181 [1997]; 232 Broadway Corp. v Calvert Ins. Co., 149 AD2d 694 [1989]; Catalogue Serv. of Westchester v Insurance Co. of N. Am., 74 AD2d 837 [1980]; Cohen v New York Prop. Ins. Underwriting Assn., 65 AD2d 71, 78 [1978]). Since “[i]nterest upon a loss payable under a fire insurance policy is not recoverable before the payment of principal is due pursuant to the policy,” the Supreme Court properly declined to award the plaintiffs interest on the difference between the appraisal award and the amount already paid by Charter Oak (Farmland Mkt. Corp. v North Riv. Ins. Co., 105 AD2d 602, 603 [1984], affd 64 NY2d 1114 [1985]; see Caiati of Westchester v Glens Falls Ins. Co., 265 AD2d at 286).
The Supreme Court also properly determined that the plaintiffs were not entitled to any additional payments for damage to personal property pursuant to the terms of the home *961 owners insurance policy. “[C]ourts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies” (State of New York v Home Indem. Co., 66 NY2d 669, 671 [1985]). “Where a provision is unambiguous, it must be given its ‘plain and ordinary meaning’ ” (Roman Catholic Diocese of Rockville Ctr. v Certain Underwriters at Lloyd’s London, 72 AD3d 1057, 1058 [2010], quoting United States Fid. & Guar. Co. v Annunziata, 67 NY2d 229, 232 [1986]). “[T]he plain meaning of the policy’s language may not be disregarded in order to find an ambiguity” (Catucci v Greenwich Ins. Co., 37 AD3d 513, 514 [2007]). “Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms” (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). Here, the clear and unambiguous terms of the subject insurance policy provided that the limit of coverage for personal property was $716,100, which, when adjusted for inflation pursuant to the terms of the policy, raised the limit of coverage to $722,644. This was the amount that was paid to the plaintiffs. Contrary to the plaintiffs’ contentions, the endorsements to the policy did not provide for increases in the limit of coverage for damage to personal property.
The plaintiffs’ remaining contentions are without merit. Chambers, J.E, Hall, Roman and Cohen, JJ., concur.